IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTOPHER SCOTT FRANCIS | : |
| Petitioner | : |
| v. | :  CIVIL NO. L-05-1709 |
| | : |
| RODERICK SOWERS, WARDEN, et al. | : |
| Respondents. | : |

**MEMORANDUM**

Pending is petitioner Christopher Scott Francis's ("Francis") pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been fully briefed and because the papers adequately present the issues, no hearing is necessary.[1] For the reasons set forth below, the Court will, by separate order, DENY Francis's petition and DIRECT the Clerk to CLOSE the case.

**I.  BACKGROUND**

Francis was indicted by the grand jury for Prince George's County, Maryland on charges of murder, first degree assault, use of a handgun in the commission of a felony or crime of violence, and second degree assault. (Docket No. 12, Exs. 1, 5, & 7). The State of Maryland extended a binding plea proposal to Francis through his counsel, Leonard Casalino. Under the terms of the plea, Francis would enter a guilty plea to the murder and handgun counts for an agreed-to sentence of life, suspended all but thirty-five years on the murder count, twenty years concurrent on the handgun count (with the first five years to be mandatory without parole by statute), five years supervised probation upon release, and dismissal of the remaining assault

---

[1] See Cardwell v. Greene, 152 F.3d 331, 37-38 (1998) (overruled on other grounds) (evidentiary hearing is not required on a § 2254 petition if the record of the case conclusively shows that petitioner is entitled to no relief).

counts. In addition, the agreement provided that the State would permit Francis to file a request for reconsideration of sentence, notwithstanding the binding plea under Maryland Rule 4-243(c). (Docket No. 12, Ex. 2.). A pre-plea pre-sentence report was completed. (Id., Ex. 3 at 2)

On June 17, 2003, Francis appeared before Circuit Court Judge Toni E. Clarke and presented his plea of guilty. The State's factual explanation of the charges showed that on September 24, 2003 Francis shot Kimberly Dawn Murray in Prince George's County once in the temple during the course of a domestic dispute over Murray's relationship with James O'Neil. Francis drove off to a convenience store after the shooting, called 911 about the incident, was seen placing a handgun near the console of his vehicle, where a gun was later retrieved from Francis's vehicle. Ms. Murray died and the manner of her death was ruled a homicide, caused by the gunshot wound to the head. (Docket No. 12, Ex. 2 at 9-10).

Following a plea colloquy, Judge Clarke found a factual basis for the State's charges, found court jurisdiction over the matter, and found the plea to be voluntarily and knowingly made. (Id., Ex. 2 at 12). On July 29, 2003, Francis was sentenced pursuant to his plea agreement.[2] (Id., Ex. 3 at 12-16). He did not apply for leave to appeal.

On May 28, 2004, Francis filed a counseled post-conviction petition in the Circuit Court for Prince George's County. (Id., Ex. 4). As recognized by the post-conviction court, Francis's sole ground went to his assertion that the plea was not freely, voluntarily, and intelligently made because: (i) he was not advised that he was waiving all non-jurisdictional defects including his allegation that his Miranda rights were violated in connection with a statement he gave to Prince George's County Police; (ii) he was not aware that he was giving up his right to appeal any violation of his Miranda rights; (iii) the trial court did not advise him of his right to file an

---

[2] The plea also included a condition that Francis have no contact with James O'Neil. (Docket No. 12, Ex. 3 at 14).

application for leave to appeal from the guilty plea and sentencing; and (iv) he was assured by counsel that he would be paroled sooner and was not advised as to any parole considerations.[3] (Docket No. 12, Ex. 4; Ex. 5 at 5 & 34-36; Ex. 7 at 4).  Counsel clearly and distinctly did not raise any allegations of ineffective assistance.  (Id., Ex. 5 at 5, 34-36; Ex. 7 at 4).

On July 22, 2004, a post-conviction hearing was held before Circuit Court Judge Michelle D. Hotten, who denied relief on August 17, 2004.  (Id., Exs. 5 & 7).  Francis filed an application for leave to appeal on October 8, 2004.  (Id., Ex. 8).  The Court of Special Appeals of Maryland dismissed the application as untimely on January 11, 2005.  (Id., Ex. 9).  On January 21, 2005, Francis filed a letter with the Court of Special Appeals, which construed the missive as a reconsideration request and directed the State to show cause why the court should not accept the application for leave to appeal as timely filed.  (Id., Exs. 10 & 11).  Both the State and Francis filed responses.  (Id., Exs. 12 & 13).  On May 10, 2005, the Court of Special Appeals summarily denied the application for leave to appeal.  (Id., Ex. 14).  The mandate was issued on June 9, 2005.  (Id.).  Notwithstanding the summary denial of his application, Francis filed a notice of appeal with the Court of Appeals of Maryland.  (Id., Ex. 15).  The Court of Appeals denied certiorari and declined to review the denial of same.  (Id., Exs. 17 & 18).

On June 22, 2005 (within the one-year limitation period set out under 28 U.S.C. § 2244(d)), Francis filed the instant Petition, arguing that his State convictions should be overturned.  He makes the following contentions:

(i) his guilty plea was not entered knowingly, voluntarily, and intelligently;

(ii) his appellate rights were not properly explained to him; and

(iii) defense counsel Casalino was ineffective for the following reasons:

---

[3] The contention regarding Francis's parole consideration was first raised during the course of the post-conviction hearing. (Docket No. 12, Ex. 5 at 6).

3

       (a)       counsel failed to seek to suppress Francis's statement;

       (b)       counsel provided false and misleading information to coerce acceptance of the guilty plea; and

       (c)       counsel permitted the acceptance of the plea while Francis was under the influence of medication.

## II.   ANALYSIS

Francis's claims divide into the following two categories: (i) claims that are procedurally defaulted because Francis did not raise them on post-conviction review;[4] and (ii) the remaining claims. The Court will address each category in turn.

### A.   Claims That Are Procedurally Barred

Francis failed to raise his ineffective assistance of counsel claims on post-conviction review. The Court will only address these claims on the merits if Francis can show cause or reasons (factors outside his control) explaining why he was unable to present the claims and what prejudice will result if he is unable to present the claim on habeas review or that the failure to consider the claims on the merits would result in a miscarriage of justice (actual innocence). See Murray v. Carrier, 477 U.S. 478, 488, 495-96 (1986).

Francis has failed to show cause for failing to raise these claims on post-conviction review. See Coleman v. Thompson, 501 U.S. 722 (1991) (Because the Sixth Amendment does not entitle petitioner to assistance of counsel on state collateral relief, attorney error at that stage cannot amount to constitutionally ineffective assistance and therefore cannot constitute cause).

---

[4] In their answer, Respondents contend that Francis's ineffective assistance of counsel claims were procedurally defaulted because Francis did not raise them on post-conviction review before the circuit court. This Court afforded Francis additional time to file his Reply and in so doing, provided him notice and direction in order to respond to the Respondents' procedural default argument. (Docket No. 14). Francis's Reply brief seemingly finds fault with post-conviction counsel in "not preparing an adequate petition and not including petitioner's claims as he desired." (Id. at 7).

Further, his claim that he is actually innocent flies in the face of the record before this Court. Accordingly, these claims are procedurally barred.

B.     Remaining Claims

Now remaining are claims that the Court will address on the merits pursuant to the standard set out under 28 U.S.C. § 2254(d) & (e).  See Woodford v. Garceau, 538 U.S. 202, 207 (2003); Beck v. Angelone, 261 F.3d 377, 380 n.3 (4th Cir. 2001).  Under § 2254(d), a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> (i)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (ii)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt."  Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curium).  In Williams v. Taylor, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was

objectively unreasonable." Id. at 409-410; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); Booth-el v. Nuth, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. See Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With the aforementioned standards in mind, the Court shall examine Petitioner's remaining claims.

(i) Voluntariness of the Plea

Francis claims that his plea was not voluntarily, freely, and intelligently given.[5] To be valid, a guilty plea must be knowing and voluntary. See Brady v. United States, 397 U.S. 742, 748 (1970). This is required because a plea of guilty constitutes a waiver of several constitutional rights including the Fifth Amendment right against compulsory self-incrimination and the Sixth Amendment rights to a jury trial and to confront one's accusers. See Boykin v. Alabama, 395 U.S. 238, 243 (1969). To enter into a knowing and voluntary guilty plea, the defendant must be aware of the constitutional rights he is waiving by pleading guilty as well as the substance of the charges to which he is pleading guilty. See Henderson v. Morgan, 426 U.S.

---

[5] Francis claims his plea was not voluntarily, knowingly, or freely given in part because he was under the influence of Sinequan and the waiver of rights form did not address non-jurisdictional defects. Although these precise claims were not raised before the post-conviction judge and are otherwise procedurally barred, the Court finds no merit to the claims for the reasons to follow.

637, 645 n.13 (1976).  His decision to plead guilty must be free from actual or threatened harm by the state or from mental coercion by the state which overbears his will.  See Brady, 397 U.S. at 750.

(ii)  Explanation of Appellate Rights

Francis further maintains that the parameters of his right to appeal were not properly explained to him by the trial court.[6]  In determining whether a waiver of appellate rights is "knowing and intelligent," review is made of particular facts and circumstances surrounding its making.[7]  See United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994).

In denying post-conviction relief, Judge Michelle D. Hotten thoroughly reviewed the plea and sentencing transcript, along with the testimony presented by Francis and defense counsel Casalino at the post-conviction hearing.  In reaching her decision to deny collateral relief, she noted Francis's charges, the potential sentences he faced, and the terms of the binding plea offer, including the absence of an automatic right to appeal.  (Docket No. 12, Ex. 7 at 1-2).  Judge Hotten offered the following statements:

> On April 9, 2003, attorney Casalino drafted a two page letter to Petitioner, outlining the plea agreement, the implications of accepting the plea and the sentence.  The letter was signed by Casalino and Petitioner and included a discussion of parole implications following sentencing.
>
> Petitioner accepted the State's proposed offer after extensive discussions with his attorney, thereby binding himself to the ABA agreement.  On June 17, 2003, Petitioner appeared before the Honorable Toni F. Clarke and tendered his plea of guilty.  Petitioner was represented by attorney Casalino and the State was represented by Dorianne Meloy.

---

[6] This ground was raised on post-conviction review as an element of the challenge to the voluntariness of the plea. As an independent ground, the claim is procedurally barred.

[7] The failure to advise a defendant of his right to appeal does not entitle him to habeas relief if he knew of his right and hence suffered no prejudice from the omission.  See Peguero v. United States, 526 U.S. 23, 24 (1999).

7

>Mr. Casalino advised Judge Clarke that he and Petitioner had "...spent a number of hours going over this decision, and yesterday...we also went through not only the rights that are contained on this waiver of rights signed by Mr. Francis today, but we also went over each and every one of these questions in great detail last night.  June 17, 2003, Transcript of Plea Hearing at 2.  Petitioner signed a waiver of rights plea form.
>
>Judge Clarke was advised again of the plea agreement and went through a plea litany with Petitioner prior to his acceptance of his plea.  Assistant State's Attorney Meloy set forth the factual predicate for the plea.  Judge Clarke agreed to be bound by the plea agreement and sentencing was scheduled on July 29, 2003.  A pre-plea sentence investigation was previously ordered.
>
>On July 29, 2003, Petitioner appeared before Judge Clarke.  Present for the State were Assistant State's Attorneys Dorianne Meloy and Carlos Acosta.  After Attorney Casalino acknowledged receiving and reviewing the pre-plea sentence investigation with Petitioner, Mr. Casalino advised the Court: "Just for purposes of the record, this has been an agreed upon sentence that your Honor has bound herself to.  The State and myself, Mr. Francis, and several members of the family have spent many months resolving it in a fashion that was presented to your Honor."  July 29, 2003, transcript of the Sentencing Hearing at 2-3.

(Docket No. 12, Ex. 7 at 2-3).

>In recognizing the allegations of error raised on collateral review, Judge Hotten stated:
>
>Defendant, through counsel, filed a Petition for Post Conviction Relief on May 28, 2004.  In sum, Petitioner asserts that 1) his plea of guilty was not freely, voluntarily, and intelligently made; 2) he did not waive any jurisdictional rights and was not apprised of what they entailed; 3) he was assured by his attorney that he would be paroled sooner and was never advised as to any parole considerations; 4) he was not aware that he was giving up his right to appeal any violation of his *Miranda* rights; 5) no one explained his appeal rights, including the filing of an application for leave to appeal.  Petitioner, through post-conviction counsel, specifically denied any allegations of ineffective assistance of counsel.  Petitioner seeks permission to withdraw his guilty plea, have his sentence vacated, and set the matter for trial, or, in the alternative, permission to file a belated application for leave to appeal.

(Id., Ex. 7 at 2-3).

>Judge Hotten further noted that:
>
>If convicted at trial, Petitioner faced a maximum penalty of life plus a term of years.  Weighing the credibility of witnesses and the evidence presented, the Court finds that Petitioner's counsel spent countless hours explaining to him

8

the nature of the charges and the evidence against him, discussed possible defenses with him, advised him of his constitutional and non-jurisdictional rights. The Court also finds that Petitioner was advised that by entering a plea of guilty to one or more of the charges that he gave up the aforementioned rights, the limits of any appeal rights, and parole considerations.

The April 9, 2003, letter from attorney Casalino outlined the terms of the proposed binding plea agreement and other significant considerations, including parole possibilities. For example, the third paragraph of the two-page letter from attorney Casalino states:

> You must understand that plea agreements of this nature are final and that there will be no reconsideration of sentence by the Judge in the further without the State's consent and there will be no appeal. You must also understand that the actual prison sentence of 35 years is subject to parole considerations except for the first 5 years sentence under the use of the handgun charge. However, pursuant to the Parole Commission statute, an individual who is sentenced for a crime of violence, as in your case, would not be eligible for parole considerations until he serves one half (½) of his sentence. You would be subject to the Parole Commission guidelines relative to parole once you have served the minimum sentence under their statutory authority. You can never guess or predict the outcome of parole hearings as they are based on your institutional history, the seriousness of the crime, your record, and matters of that nature.

The letter was affixed with the signatures of both Mr. Casalino and Petitioner. Prior to their signatures is the following sentence: "By signing this letter, you are acknowledging that this is your free and voluntary act and decision and that it is in your best interest to enter a plea of guilty as outlined above." State's Exhibit 1. The waiver of rights plea form, which was also signed by Petitioner and Mr. Casalino, was made a part of the Court's file at the time of his plea hearing on June 17, 2003. In addition Judge Clarke went over Petitioner's right again, and the plea agreement was sent forth on the record.

Petitioner is an intelligent person who was ably represented by a very competent attorney who thoroughly outlined the charges, the evidence against him, advised him of the important aspects of the plea agreement and the rights Petitioner relinquished in exchange for the plea. Mr. Casalino's representation was professional, competent and reasonable under the circumstances and he brought his years of skill and knowledge to bear in negotiating a fair plea agreement.

Petitioner's plea of guilty was freely, voluntarily, and understandably made. He was advised of all his rights (jurisdictional and otherwise) and freely,

>voluntarily, and understandably waived them.  Petitioner was advised of relevant parole considerations and was not promised by Mr. Casalino that he would be released sooner on parole.  He did not file an application for leave to appeal.  Petitioner received the benefit of a very good bargain.

(Docket No. 12, Ex. 7 at 6-8).

The Court finds no basis to overturn Judge Hotten's decision.  The Court observes that during the plea hearing on June 17, 2003, Judge Clarke conducted a thorough plea colloquy, inquiring into: (i) the status of Francis's age, health, and prescription medications related to his ability to comprehend the plea proceeding; (ii) Francis's familiarity with and understanding of the terms of the plea agreement; (iii) his satisfaction with the services of counsel; (iv) and his knowledge that he was waiving a number of rights, so as to freely enter into the plea.  (Id., Ex. 2 at 6-9 & 11-12).  Further, approximately one month later, at Francis's July 27, 2003 sentencing, he intelligently and eloquently spoke to Judge Clarke at length in order to acknowledge and explain the shooting and its ramifications.  (Id., Ex. 3 at 10-12).  Finally, the Court observes that Francis was a high school graduate, that he had no difficulty with the English language, and that he had discussed the plea agreement extensively with his counsel.  Francis signed the "Waiver of Rights at Plea" form, which fully noted his appellate rights;[8] Judge Clarke succinctly informed Francis of his rights after sentencing, noting that "You have 30 days to appeal your sentence"; and counsel Casalino later reiterated Francis's right to appeal later at sentencing.  (Docket No. 12,  Ex. 3 at 14 & 15; Ex. 6 at Attachment).

The record fully supports Judge Hotten's post-conviction findings that Francis's plea was knowingly and voluntarily entered and that his limited appeal rights were explained.  The post-conviction court decision survives scrutiny under 28 U.S.C. § 2254(d).

---

[8] In signing the Waiver Form on June 17, 2003, Francis acknowledged that he "will not be able to appeal my case but...can ask an Appellate court to review this plea and that request must be in writing and filed within thirty (30) days of today."  (Docket No. 12, Ex. 6 at Attachment).

**III.    CONCLUSION**

For the foregoing reasons, the Court will, by separate Order, DENY Francis's § 2254 petition and DIRECT the Clerk to CLOSE the case.  Should Francis choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must filed a notice of appeal with the Clerk of this Court within 30 days after the date of entry of the judgment order.  Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1).  See also 28 U.S.C. § 2253(c).  If this Court should deny certification, Francis may request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue the certificate.

Dated this ___18th___ day of May, 2007.

_____/s/_____
Benson Everett Legg
Chief Judge